THERMOID RUBBER COMPANY, Respondent, v. BRICTSON MANUFACTURING COMPANY, Appellant.

(163 N. W. 567.)

(File No. 4076.   Opinion filed June 26, 1917.)

1.   **Damages—Automobile Tire Treads, Damage to Sale of, When Used as Part of Unit Embracing Inferior Tires Sold to Tread Maker—Counterclaim, Sufficiency—Right to Recover.**

   Appellant's counterclaim, after alleging a warranty by respondent that automobile tires and tubes manufactured by it were better than any standard make on the market, were of first class material, could be safely used and sold by appellant in trade under treads made by appellant and otherwise, were fit for purpose of sale by appellant in conjunction with his treads—the tires, tubes and treads to be combined by appellant at his factory and sold by him as a finished product, and that those tires and tubes furnished to appellant failed to fulfill the warranties, that respondent knew such tires and tubes were to

be largely used and sold by appellant in connection with his treads and that he was purchasing to equip them with his treads for wholesale and retail trade as a single finished product, that if they proved inferior, etc., it would injure appellant's business, etc., and cause customers to believe that trouble resulting from the defective tires and tubes was in failure of treads to protect same. Held, that the rule of damages under which recovery could be had under the counterclaim is, that only such damages as might naturally arise through breach of the contract under the particular circumstances in contemplation by both parties, are recoverable; that by reason of appellant's failure to allege that respondent knew that such injury to appellant's business would be of the particular nature which he alleges did result, to-wit, that great loss of profits and of business in customer's refusing to keep the treads after the tires and tubes had proven defective, resulted, to his damage, etc.,—no recovery could be had under the counterclaim; and a demurrer thereto was properly sustained; it being clear from the pleading that the treads could be used with any proper sized tires and tubes after those so warranted proved defective.

2. **Same—Injury to Sales of Auto-treads Used With Tires and Tubes Warranted to Maker of Treads—Right of Vendee Consumer to Return Treads, or Defend—Special Contract, Necessity For—Measure of Damages.**

Nor could a purchaser from appellant, maker of the treads, of such combination of tubes, tires and treads as a single finished product, simply because he mistakenly laid his troubles to the treads when they were due to defective tires and tubes, recover any damages except such as actually resulted from the defective tires or tubes, nor return the treads, or defend against a suit to recover their value, in absence of special contract binding appellant to accept such return and to release purchaser from liability therefor; and if appellant contemplated making such contracts with his customers, and desired to look to respondent to reimburse him for losses thereunder, he should have advised respondent of same before purchasing tires and tubes, so that such possible liability would have been in contemplation of respondent.

3. **Same—Sales—Right of Recovery, Effect of Necessity of Suing to Enforce, Upon Right—Defective Auto—Tires Sold to Maker of Treads, Expenses of Suit Against Consumer of Treads, Whether Recoverable of Tire Vendor.**

Inasmuch as appellant, manufacturer of automobile treads, who was furnished by respondent with its make of tires and tubes, to be combined with the treads and sold by appellant as a single finished product, could, in the event of a customer of

combined product refusing to pay him the value of the tread because he, the customer, had mistakenly laid his troubles to the treads when they were due to defective tires and tubes, recover full selling price of treads sold the consumer, **held,** that the mere fact that appellant might have to sue to enforce recovery is not a basis of a claim against respondent for expenses of such suit, in absence of an express contract of indemnity.

Appeal from Circuit Court, Brookings County. Hon. CARL G. SHERWOOD, Judge.

Action by the Thermoid Rubber Company, a corporation, against O. A. Brictson, trading as the Brictson Manufacturing Company, to recover for certain automobile tires and tubes sold to defendant, who counterclaims for damages resulting to sales of his make of automobile treads by reason of breach of warranty of the tires and tubes, combined with and sold by defendant as a single finished product. From an order sustaining a demurrer to the counterclaim, defendant appeals. Affirmed.

*Hall, Alexander & Purdy,* for Appellant.

*Cheever & Cheever,* for Respondent.

(1) To point one of the opinion, Appellants cited: Leavitt v. The Fibroid Co., 146 Mass. 440, 82 N. E. 682, 15 L. R. A. (N. S.) 855; Lewis v. Roundtree, 79 N. C. 122, 28 Am. Rep. 309; Carroll-Porter & Tank Co. v. Columbus Machine Co., 5 C. C. A. 190, 55 Fed. 451; Swain v. Schieffelin, 18 L. R. A. 385 (N. Y.)

(2) To point two of the opinion, Respondent cited: Henry v. Hobbs, 130 N. W. 616 (Mich.)

WHITING, J. Appeal from an order sustaining a demurrer to a counterclaim. The following facts admitted by such demurrer are the only ones material to a consideration of the question before us: Respondent was a manufacturer of automobile tires and tubes. Respondent knew that appellant was a manufacturer of a so-called "tread," an outer covering for automobile tires, intended for the protection of tires and to prevent skidding, and that appellant was engaged, both as a wholesaler and retailer, in selling these treads and in selling automobile tires and tubes in conjunction with such treads and otherwise. Respondent warranted to appellant that its tires and tubes were better than any standard make on the market; that they were of first-class ma-

terial; that they could be safely used and sold by appellant in the trade under his treads and otherwise, and that they were good and fit for the purpose of sale by him in conjunction with his said treads; the tires, tubes, and treads to be combined by him at his factory and sold by him as a finished product. Respondent, at the time of making such warranties and at the time of entering into arrangements whereby appellant was to purchase large quantities of its tires and tubes, well knew and had reason for knowing that such tires and tubes were to be largely used and sold by appellant in connection with his treads; that appellant was purchasing such tubes and tires for the purpose of equipping such tubes and tires with the said treads and for the purpose of selling, both at wholesale and retail, such combination of tubes, tires, and treads as a single finished product, and that, in the event the tubes and tires proved of inferior quality or workmanship, it would seriously injury his business in the manufacture and sale of such treads, and would cause customers to believe that the cause of the trouble resulting from such defective tubes and tires was wholly, or partially, in the failure of said treads to protect the same. Nothwithstanding such knowledge on the part of respondent, and notwithstanding the warranties that its tubes and tires were and would be of first-class construction, material, and workmanship, and better than any standard make on the market and fit for the purpose for which they were so sold, it furnished appellant tubes and tires which failed to fulfill and perform such warranties. By reason of the failure of such tubes and tires to fulfill said warranties, a large number of appellant's customers, to whom he sold such tubes and tires covered by treads, refused to pay him either for tubes, tires, or treads, and he sustained a great loss in his tread business by reason thereof. Appellant has been, and is, an extensive advertiser of said treads, and by reason of the said defects in respondent's tubes and tires, sold as aforesaid by appellant in connection with his treads, he has sustained great loss of profits and of business in customers refusing to keep the treads after the tires and tubes had proven defective as aforesaid, in all to his damage in the sum of $25,000.

[1] No question of the right to recover, under section 2305, C. C., the ordinary damage resulting from the breach of warranty of the quality of these tubes and tires—the difference between

their actual value and what their value would have been if warranted—is presented under this counterclaim; such damage being covered by another counterclaim. This eliminates from our consideration the part of the rule laid down in Hadley v. Baxendale, 9 Ech. 341, 5 Eng. Rul. Cas. 502, which announces the right to recover such damages 'as may fairly and reasonably be considered, * * * [as] arising naturally, i. e., according to the usual course of things, from such breach of contract itself," and requires us to determine whether the damages sought to be recovered in this case are those recoverable under the other part of the rule laid down in Hadley v. Baxendale, supra, which are "such as may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract, as the probable result of the breach of it," or, as perhaps more accurately stated, such damages as might arise naturally through a breach of the contract under the particular circumstances that were in contemplation of both parties at the time of the contract. While this rule of law is clear and well established, its application to particular facts is often extremely difficult, and an examination of decided cases is of little benefit and may, in fact, tend to confuse rather than aid in such application.

[2] Respondent knew that appellant intended to sell such tires and tubes in conjunction with his treads and otherwise, and that, in some cases at least, such tires, and tubes would be used in conjunction with such treads. It knew that, if such tires and tubes as were used in conjunction with such treads did not comply with the warranties, appellant's business in the manufacture and sale of treads would be injured, because customers would believe the cause of their troubles rested partly or wholly in appellant's casings. While appellant alleges that respondent knew that appellant's customers would mistakenly lay their troubles to the treads, and that appellant knew the result would be an injury to appellant's business in the manufacture and sale of treads, he has failed to allege that respondent knew that such injury to appellant's business would be of the particular nature which he alleges did result. Conceding, however, that respondent must have known, and therefore contemplated, that appellant's customers would refuse to keep the treads after the tires and tubes had proven defective, and would refuse to pay either for tubes, tires,

or treads, the two particulars in which appellant claims he suffered injury to his business, and that therefore respondent contemplated that, in case of breach of warranty, that would happen which did, the question still remains whether injuries of this particular nature are actionable and can form the basis of responsibility on respondent's part because when entering into the warranties it contemplated that this very thing would happen as a result of the breach of such warranties.

[3] There is a clear distinction between the facts before us and a case where parties contemplated that the thing warranted should be used in connection with some other article, and through the defects in the warranted article, there should result an injury to such other article; such defects in the warranted article being of such a nature that the party warranting must have contemplated that its use in connection with the other article would cause the injury complained of. In such case there could be a recovery based upon the injury to the other article. There is no claim that the treads were in any manner injured because used in connection with these particular tires and tubes. Neither is there any allegation that the treads were so constructed that they could be used only in assembled units and in connection with these particular tires and tubes. In fact it is clear that they could be used with any proper sized tires and tubes, and it is therefore clear that the treads, even after the tires or tubes proved defective, could be used by their purchasers in connection with other tires and tubes. Could then such a purchaser, simply because he mistakenly laid his troubles to the treads when it was all due to defective tires and tubes, recover of appellant any damage except such as actually resulted from the defective tires and tubes? Could he lawfully return the treads or defend against an action brought to recover their value? He certainly could not, in the absence of some special contract whereby appellant bound himself, in case the tires or tubes proved defective, to accept a return of the treads and to release the purchaser from liability therefor. If appellant contemplated making such contracts with his customers and desired to look to respondent to reimburse him for losses thereunder, he should have advised respondent of same before purchasing the tires and tubes, so that such a possible liability would have been in the contemplation of respondent. Inasmuch

as appellant had the legal right to recover from his customers the full selling price of all treads sold, the mere fact that he might have to bring actions to enforce such recovery cannot be the basis of a claim against respondent for the expenses incident to the enforcement of his said legal rights, in the absence of an express contract of indemnity; moreover the allegations of the counterclaim do not embrace such element of damages.

The order appealed from is affirmed.